IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

AXA EQUITABLE LIFE
INSURANCE COMPANY,

    Plaintiff,

v.                                  CASE NO. 5:11-cv-65-RS-MD

KAY J. CHERRY and
LYNN L. CHERRY,

    Defendants.
_____/

## JUDGMENT

On October 16, 2002, James and Kay Cherry were divorced. In their mediation settlement agreement ("MSA"), the husband agreed to pay lump sum alimony of $180,000 over ten years. The MSA stated:

> The Husband shall pay as non-modifiable alimony the following:
>
>   A. Two Thousand Dollars ($2,000.00) per month for a period of sixty (60) months with the first payment due on or before November 1, 2002 and continuing for an addition fifty-nine (59) months.
>
>   B. At the end of sixty (6) months, One Thousand Dollars ($1,000.00) per month for a period of an addition sixty (60) months.
>
>   C. The above alimony shall terminate upon the death or remarriage of the Wife and is for the purposes of support.
>
>   D. The above alimony will be secured by the Husband maintaining "Equitable" and "Ohio" life insurance policies on his life with the Wife as sole irrevocable beneficiary. The Husband agreed to not

1

encumber or decrease the face value so long as he has an alimony obligation. The Husband shall prove the Wife with documentary proof of said insurance. In the event that the Husband dies while he has an alimony obligation to the Wife, the proceeds from said life insurance policies shall be held in trust and transferred to the Wife.

James Cherry died on December 2, 2010, and had a surviving spouse, Lynn Cherry. At the time of his death, Kay Cherry was owed $26,500 in alimony. Each insurance police was valued at $100,000. However, only the Equitable policy is at issue here. At some point after executing the MSA, Mr. Cherry changed the Equitable policy beneficiary so that his new wife would receive half of the proceeds, leaving Kay with only a half interest in the policy.

Kay Cherry claims that she is entitled to the entire proceeds of the policy because the MSA says, "In the event that the Husband dies while he has an alimony obligation to the Wife, the proceeds from said life insurance policies shall be held in trust and transferred to the Wife." Lynn Cherry argues that the life insurance policies were only security for the alimony and that Kay Cherry is entitled only to the $26,500 unpaid alimony. Unfortunately, this case arises because of poor contract drafting.

A MSA is subject to interpretation like any other contract. *Crawford v. Barker*, 64 So.3d 1246, 1255 (Fla. 2011). "In construing a contract, the court should place itself as nearly as possible in the position of the parties when the contract was executed, and should consider the object sought to be accomplished

by the agreement." *Ballantyne v. Ballantyne*, 666 So.2d 957, 959 (Fla. 1st Dist. Ct. App. 1996). When a MSA is ambiguous, the terms of the agreement need to be read in the context of the entire contract. *See Liss v. Liss*, 937 So.2d 760 (Fla. 4th Dist. Ct. App. 2006).

Kay Cherry argues that the contract is unambiguous because it says that she will receive the proceeds from the policy if James Cherry still owed her *any* alimony at the time of his death; however, I disagree. Life insurance policies in MSAs can have two separate purposes: (1) security for unpaid obligations or (2) part of the property distribution to minimize economic harm to the family. *Id.* at 763. If the life insurance is security for unpaid support obligations only the unpaid portion may be encumbered. *Id.* at 763-64; *See Smith v. Smith*, 912 So.2d 702, 705 (Fla. 2nd Dist. Ct. App. 2005). The MSA in this case states that the "alimony will be *secured*" by the life insurance policies.

Additionally, the structure of the agreement further supports that the life insurance policies were for security for any unpaid alimony if James Cherry died before the total amount was paid. The MSA is divided into three sections. The first section divides the parties' assets and liabilities. The second section establishes the alimony payment and security for it. The last section is for other designated issues. If the life insurance policies were meant to be part of the

property distribution, where Kay Cherry would take the entire proceeds, then it would follow that it should have been included in the assets and liabilities section.

Reading the contract in its entirety, while determining the original intent of the parties, I find that the life insurance policy was meant only to secure any unpaid obligation James Cherry had at his death.  The alternative option would result in Kay Cherry getting a windfall because she outlived her ex-husband, and I do not accept that was the intention when the MSA was made.  Parts A, B, C, and the beginning of D are clear and unambiguous—the life insurance policies were only to be security for clearly defined alimony.  It is impossible to reconcile the majority of the alimony section with Kay Cherry's claim that she is entitled to the entirety of the proceeds.

**IT IS ORDERED THAT** Kay Cherry will only receive the amount of unpaid alimony from the life insurance policy, $26,500.  Lynn Cherry will receive the remaining proceeds of the policy.

**ORDERED** on December 5, 2011.

/S/ Richard Smoak
**RICHARD SMOAK**
**UNITED STATES DISTRICT JUDGE**
